FILED
U.S. DISTRICT COURT
DISTRICT OF M...

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2002 FEB -1  P 4: 25

JVW ENTERPRISES, INCORPORATED    *

        Plaintiff    *

        vs.    *    CIVIL ACTION No. MJG 00-1867

INTERACT ACCESSORIES, INC.    *
et al.

        Defendants    *

*    *    *    *    *    *    *    *    *


## MEMORANDUM AND ORDER
## RE PATENT CLAIM CONSTRUCTION

In this case, Plaintiff sues Defendants for infringement of Claims 1, 3 and 4 of U.S. Patent 4,494,754 ("the '754 Patent" or "the Patent").  Pursuant to the Scheduling Order, the parties have filed materials relating to what they have identified as claim construction issues.  The Court has held a hearing regarding claim construction issues and has had the benefit of the arguments of counsel.


I.    GENERAL PRINCIPLES

The construction of patent claims is a matter for the court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 390(1996). In the process of claim construction, the focus is upon what a person of ordinary skill in the pertinent art would have understood to be the meaning of the claim language.  Markman v.

Westview Instruments, Inc., 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  The court must first look at the basic evidence of record, namely, the language of the claim, the specification, and the prosecution history.  Insituform Tech., Inc. v. Cat Contracting, Inc., 99 F.3d 1098, 1105 (Fed. Cir. 1996), cert. denied 520 U.S. 1198 (1997).  The claim language itself defines the scope of the claim.  Therefore, "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language."  Eastman Kodak Co. v. Goodyear Tire & Rubber Co., 114 F.3d 1547, 1552 (Fed. Cir. 1997).

The Court of Appeals for the Federal Circuit has held that claims should be read in view of the specification.  See, e.g., id. at 1582.  However, the Federal Circuit cautions against limiting the scope of a claim to the preferred embodiment or specific examples disclosed in the specification.  See, e.g., Ekchian v. Home Depot, Inc., 104 F.3d 1299, 1303 (Fed. Cir. 1997); see also Intervet Am., Inc. v. Kee-Vet Lab., Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("[L]imitations appearing in the specification will not be read into claims, and . . . interpreting what is meant by a word in a claim 'is not to be

2

confused with adding an extraneous limitation appearing in the specification, which is improper.'") (citation omitted).

There is presumed to be "a difference in meaning and scope when different words or phrases are used in separate claims." United States v. Telectronics, Inc., 857 F.2d 778, 783 (Fed. Cir. 1988). There is a presumption against construing claims as being so similar as to "make a claim superfluous." Id. at 784.


## II. DISCUSSION

### A. The Patent and Claim at Issue

The '754 Patent was granted for an alleged invention for an "Apparatus for Playing Home Video Games." '754 Patent Title. The Patent discloses a "holder for video game controllers[1]" which can be stabilized by the player's lower body weight as illustrated by Figures 4,5 and 6 shown (in part) below:



Fig.4

Fig.5

Fig.6

---

[1]        '754 Patent, Col. 1, Lines 37 -38.

In the instant case, the parties seek the Court's construction of the terms in Claims 1,3 and 4 indicated below:

CLAIM 1:
An ACCESSORY for aiding a video game player during play of a video game, the video game player operating a VIDEO GAME CONTROLLER which transmits signals in response to manipulations made on the video game controller by the video game player, the transmitted signals being processed by a computer processor which responsively manipulates images on a television screen, said accessory comprising:

a BASE, said base extending horizontally, said base being POSITIONABLE ON A SURFACE SO AS TO PERMIT A VIDEO GAME PLAYER TO STABILIZE SAID BASE BY PLACING LOWER BODY WEIGHT ON SAID BASE;

a RISER, said riser EXTENDING UPWARD FROM SAID BASE;

and a MOUNTING MEMBER attached to said riser, said mounting member being positioned over the lap of a player with lower body weight on said base;

said mounting member including MEANS FOR LOCKABLY RECEIVING A VIDEO GAME CONTROLLER IN FIXED POSITION ON SAID MOUNTING MEMBER.

CLAIM 3:
The video game accessory of claim 1, in which said riser extends between the legs of a player with lower body weight on said base.

4

CLAIM 4:

> The video game accessory of claim 1, in which
> said controller receiving means includes at least one
> RESILIENT MEMBER being forceable to a position which
> allows said receiving means to receive a video game
> controller, upon release of pressure on said resilient
> member resiliently returning to lock the video game
> controller in place.

## B.   Construction of the Claim Language

### 1.   Accessory

The word "accessory" is used in the preamble of the Claims
to state the intended use of the invention claimed.  The term
does not, in context, add to the claim elements defining the
invention.  See Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861,
868 (Fed.Cir. 1985) citing Kropa v. Robie, 187 F.2d 150, 152
(CCPA 1951).

In particular, the use of the term "accessory" in the
preamble does not, in and of itself, prevent the claim from
reading on a product that might combine a game controller and the
accessory in a self-contained unit.  Any such restriction of the
invention must be found, if at all, in the claim elements rather
than in the preamble.

The term "accessory" is construed as meaning a device which
is not necessary to the operation of a video game but which can
be used by a player in conjunction with a video game controller.

5

## 2.   Video Game Controller

Defendants contend that the term "video game controller" should mean only those which are joy sticks or are stabilized with one hand and operated by the other hand.  The Court cannot agree.

The patent expressly states that "game controllers take a variety of forms, but usually [hence, not always] include at least a button and either a dial or a joystick."  '754 Patent col. 1, lines 17-18.  The term "video game controller" in the claim should not be read narrowly to include only one of the possible types to which the inventor refers in the specification.

Nor can the Court find in the term "video game controller" a limitation to a device that is stabilized with one hand and operated by the other.  While the patent refers to controllers so stabilized when describing the benefits of the invention[2], there is no indication that the term video game controller should be read to exclude such devices that might not be stabilized with one hand and operated with another.  Indeed the Patent states: "Virtually all [hence not all] controllers require the use of

---

[2]      "The invention generally relates to a unique holder for video game controllers <u>which</u> <u>frees</u> <u>one</u> <u>hand</u> and simplifies the operation of the game controller . . ."  '784 Patent, Col. 1, Lines 37 - 39. (Emphasis added)

6

both hands, one to hold the controller and one to operate the controls."  '784 Patent, Col. 1, Lines 19 - 21.

Moreover, the words "stabilized" and "stable" are, in the context of the '754 Patent, relative terms referring to a continuum of conditions between a theoretical state of complete instability to a theoretical state of perfect stability.  Thus, a video game controller can be "stabilized" by being held in one hand if it is made more stable than it would be if not so held, for example by being placed on a table.  References to the use of the invention to "stabilize" such a game controller refer to making the controller more stable than it would be if the invention were not used.

## C.   <u>Base . . . positionable on a surface so as to permit a video game player to stabilize said base by placing lower body weight on said base</u>

The Defendants contend that this limitation excludes a base that would be stable without the application of the player's lower body weight.  The Defendants seek to have the Court distinguish between a base that <u>requires</u> a player's lower body weight to be stabilized and one that may be somewhat stable alone, but can be made more stable by application of the player's lower body weight on the base.

7

As noted above, in the context of the '794 Patent, the word "stabilize" is used as a relative term, that is to mean "to make more stable" rather than to mean to render a completely unstable object a completely stable one.

The Court concludes that the limitations here at issue should be construed to include a base that would permit (but would not require) a player to make it more stable by application of the player's lower body weight on the base. Thus, the limitation would exclude a base that did not permit the use of a player's lower body weight to render it more stable. But, the limitation would not exclude a base that was somewhat stable alone, but would be made more stable by application of the player's lower body weight.

### D. Riser . . . extending upward from said base

The question presented is whether the riser extending upward from said base must be of sufficient height or elevation to permit a user to place his lap (lower body) between the base and the mounting member.

The essence of the invention is the ability of a player to place his lower body so as to have its weight exert a downward stabilizing force on the base. This can only be done by placing the player's legs between the base and the mounting member. The

8

space to accomplish this must be provided by the elevation between the base and mounting member which are separated by the riser.  Accordingly, the riser must be of sufficient elevation to permit a player to get his lap (Claim 1) or legs (Claim 3) between the base and the mounting member.

### E.    Mounting Member

Defendants seek a construction whereby the term "mounting member" would be limited to a horizontal platform.  The Court finds no basis to so limit the term.  Rather, the term should be construed to include a platform, frame or support on which a video game controller is mounted by the means specified in the claim.

### F.    Means for Lockably Receiving a Video Game Controller In Fixed Position on Said Mounting Member

In the construction of this means plus function element, the Court must define the function.  The claim then includes all means disclosed in the Patent that perform the defined function.

The critical word is "lockably."  Plaintiff, understandably, seeks to equate "lockably" with "attached."  The Court cannot agree.  Plaintiff seeks to have the Court read the limitation "lockably" out of the claim.

9

The term "lockably" is, in context, construed to mean
"attached by a method whereby one can lock a game controller in
place for use and can unlock and release the game controller
after use."  The use of the term "fixed position" does not serve
to negate the limitation that the attachment of the controller
top the mounting member be "lockable."  While locked in place,
the controller is in a "fixed position" on the mounting member;
however, the attachment must be "lockable" and "unlockable."

Plaintiff argues that it is not necessary that the player be
able to lock and unlock the controller vis-a-vis the mounting
member.  That is to say, the limitation would not exclude a
device which had a controller lockably attached to the mounting
member at the factory.  That may be true, but the use of the
work "lockably" in context means that the controller must be
capable of being locked and unlocked from the mounting member,
not merely that it can be attached and detached.  Hence,
attachment by means of soldering would not be a "lockable"
attachment merely because one could use a soldering iron to melt
the solder and effect a detachment.  The locking and unlocking
concept is illustrated (although not necessarily exclusively) in
the Patent disclosure wherein the controller/joy stick is locked
in place by readily unlockable resilient prongs.

The parties agree that the controller holders 21-24 are
disclosed structure for the function of this "means plus
function" limitation.   The parties disagree as to whether the
combination of controller holders 21-24 and the casing of
controller 40 also constitute such disclosed structure.   The
Court, having reviewed the parties' submissions and arguments on
this issue, finds that further presentation of the parties'
positions will be helpful, if not necessary.   In particular, the
Court would benefit from papers and oral argument focused on the
precise issue, any helpful precedents and references to
prosecution history and prior art.   Accordingly, the issue
remains pending.

### G.   Resilient Member

The parties do not seem to disagree as to the meaning of the
words "resilient member" in Claim 4.   Even if they do disagree,
the issue is not a difficult one.   Quite obviously, the term
"resilient member" means a member that is resilient.   The word
"resilient" should be defined as capable of returning to its
original shape when deformed.   The controller holders disclosed
in the patent are examples of resilient members.

It may be that Plaintiff seeks to have the foregoing
definition of the term "resilient member" somehow eliminate the

11

remaining limitation in the claim.  Of course, that position - if
that is what Plaintiff is arguing - is rejected.   Claim 4 is
construed to require that the accessory of Claim 1 include a
"resilient member" (that is, a member capable of returning to its
original shape when deformed) that is "forceable to a position
which allows said receiving means to receive a video game
controller, upon release of pressure on said resilient member
resiliently returning to lock the video game controller in
place."

## V.    CONCLUSION

For the foregoing reasons, the Court concludes the following
with regard to the construction of the claim terms placed at
issue:

> 1.    The word "accessory" is construed as meaning a
>       device which is not necessary to the operation of
>       a video game but which can be used by a player in
>       conjunction with a video game controller.
>
> 2.    The words "video game controller" are construed as
>       meaning a device whereby the hand movements of a
>       player are converted to electrical impulses
>       transmitted to the video game processor and used
>       to control the operation of the game on screen.
>
> 3.    The words "base . . . positionable on a surface so
>       as to permit a video game player to stabilize said
>       base by placing lower body weight on said base"
>       are construed to mean a base that would permit
>       (but would no require) a player to make it more

12

stable by application of the player's lower body weight on the base.

4.    The words "riser . . . extending upward from said base" are construed to be limited to a riser of sufficient elevation to permit a player to get his lap (Claim 1) or legs (Claim 3) between the base and the mounting member.

5.    The words "mounting member" are construed to include a platform, frame or support on which a video game controller is mounted by the means specified in the claim.

6.    The words "means for lockably receiving a video game controller in fixed position on said mounting member" are construed to require that the attachment between the controller and the mounting member be "lockable."

   a.    The controller holders 21-24 constitute disclosed structure performing the defined function.

   b.    The question whether the combination of the controller holders 21-24 and the casing of controller 40 also constitute disclosed structure performing the defined function remains pending.

7.    The term "resilient member" means a member that is capable of returning to its original shape when deformed.

8.    The parties shall submit supplemental briefing regarding the aforesaid pending question.

   a.    Each side shall file an initial memorandum with exhibits by Monday, February 18, 2002.

   b.    Each side may file a reply by Monday, February 25, 2002.

13

9.    By February 8, 2002, Plaintiff's counsel shall arrange a telephone conference with Chambers to discuss the scheduling of further proceedings herein, including argument on the pending issue described herein and trial.

SO ORDERED this __1st__ day of February, 2002.

_____
Marvin J. Garbis
United States District Judge

14