U.S.D

2003 MAY -8  A 10: 26

CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JVW ENTERPRISES, INCORPORATED    *

                    Plaintiff    *

             vs.                 *    CIVIL ACTION No. MJG-00-1867

INTERACT ACCESSORIES, INC.       *
et al.

                    Defendants   *

*        *        *        *        *        *        *        *        *

## MEMORANDUM OF DECISION

This case was tried before the Court without a jury. The
Court has heard the evidence, reviewed the exhibits, considered
the materials submitted by the parties and had the benefit of the
arguments of counsel. The Court now issues this Memorandum of
Decision as its findings of fact and conclusions of law in
compliance with Rule 52(a) of the Federal Rules of Civil
Procedure


## I.    BACKGROUND

At all times relevant hereto, JVW Enterprises, Inc. ("JVW"
or "Plaintiff") has been the owner of United States Patent Number
4,494,754, ("the '754 Patent") entitled "Apparatus for Playing
Home Video Games," issued January 22, 1985. At all time relevant
to this case, Interact Accessories, Inc. ("Interact" or

"Defendant") has been engaged in the business of manufacturing[1] video game accessory products.  Defendant's products include, as pertinent to the instant case, certain products referred to as "Racing Wheels," described herein.  The Patent discloses what is referred to as a "holder for video game controllers[2]" which can be stabilized by the player's lower body weight as illustrated by Figures 4, 5 and 6 of the '754 Patent shown (in part) below



Fig. 4          Fig. 6

Fig. 5

Plaintiff alleges infringement of Independent Claim 1[3] ("the Claim") which claims:

> An accessory for aiding a video game player during play of a video game, the video game player operating a video game controller which transmits signals in response to

_____

Or causing to be manufactured.

'754 Patent, Col. 1, Lines 37-38.

Together with dependent claims 3 and 4, "the Claims."

2

manipulations made on the video game
controller by the video game player, the
transmitted signals being processed by a
computer processor which responsively
manipulates images on a television screen,
said accessory comprising:

a base, said base extending horizontally,
said base being positionable on a surface so
as to permit a video game player to stabilize
said base by placing lower body weight on
said base;

a riser, said riser extending upward from
said base;

and a mounting member attached to said riser,
said mounting member being positioned over
the lap of a player with lower body weight on
said base;

said mounting member including means for
lockably receiving a video game controller in
fixed position on said mounting member.

Pursuant to Markman v. Westview Instruments, Inc., 517 U.S.

370, 390 (1996), the court construed disputed terms in the Claims

as follows:

- The word "accessory" is construed as meaning
  a device which is not necessary to the
  operation of a video game but which can be
  used by a player in conjunction with a video
  game controller.

- The words "video game controller" are
  construed as meaning a device whereby the
  hand movements of a player are converted to
  electrical impulses transmitted to the video
  game processor and used to control the
  operation of the game on screen.

- The words "base . . . positionable on a surface so as to permit a video game player to stabilize said base by placing lower body weight on said base" are construed to mean a base that would permit (but would no[t] require) a player to make it more stable by application of the player's lower body weight on the base.

- The words "riser . . . extending upward from said base" are construed to be limited to a riser of sufficient elevation to permit a player to get his lap (Claim 1) or legs (Claim 3) between the base and the mounting member.

- The words "mounting member" are construed to include a platform, frame or support on which a video game controller is mounted by the means specified in the claim.

- The words "means for lockably receiving a video game controller in fixed position on said mounting member" are construed to require that the attachment between the controller and the mounting member be "lockably."

- The term "lockably" is, in context, construed to mean "received in fixed position by the interlacing of fitting of parts into each other." The use of the term "fixed position" in the Claim does not serve to negate the limitation that the fixing in position of the controller to the mounting member be "lockably." While locked in place, the controller is in a "fixed position" on the mounting member; however, the fixing in position must be "lockably," that is by the interlacing of fitting of parts into each other.

  The controller holders 21-24 constitute disclosed structure performing the defined function.

4

- The combination of the controller holders 21-24 and the casing of controller 40 does not constitute disclosed structure performing the defined function.

Memorandum and Order Re Patent Claim Construction issued February 1, 2002 ("Claim Construction Order") at 12-13; Supplemental Memorandum and Order Re Patent Claim Construction issued May 9, 2002 ("Supplemental Claims Construction Order) at 5-6.

## II.   DISCUSSION

### A.   The Accused Devices

The accused devices are controllers for video games simulating the experience of driving automobiles and other vehicles.  The devices are constructed so as to give the appearance and feel of an automobile steering wheel with control buttons thereon, as illustrated below:

 

B.    Infringement

The Plaintiff has the burden of proving infringement by a preponderance of the evidence. Lemelson v. United States, 752 F.2d 1538, 1547 (Fed. Cir. 1985). A patent claim is infringed if the accused device embodies every element of the claim as properly interpreted. Texas Instruments, Inc. v. U.S.I.T.C., 805 F.2d 1558, 1562 (Fed. Cir. 1986). A device that does not literally infringe a patent may be held to infringe by virtue of the doctrine of equivalents.

As stated by the United States Supreme Court in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 732 (2002), "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described... [t]he doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." Id. at 732-33

Generally speaking, an "equivalent" has been defined as an element of an accused device that, while not identical to the claimed element, "performs substantially the same function in substantially the same way to obtain the same result." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950). Other evidence of equivalence may also factor into the

6

determination, depending on the specifics of the case.  Hilton
Davis Chem. Co. v. Warner-Jenkinson Co., Inc., 62 F.3d 1512, 1518
(Fed. Cir. 1995), rev'd on other grounds, 520 U.S. 17 (1997).

   Thus, the function of the fact-finder in this patent
infringement suit is to determine whether the accused devices
embody every element of the Claims at issue as construed by the
Court pursuant to Markman.  Moreover, in the absence of literal
infringement, the fact-finder must decide whether there is
infringement by equivalents.

   In the instant case, the claims at issue are Claims 1, 3 and
4 of the Patent.  Since Claim 1 is the independent Claim and
Claims 3 and 4 depend from Claim 1, this discussion is couched in
terms of Claim 1.  In view of the general similarity of the
accused devices, the discussion shall be set forth in terms of
the claim elements with reference to the alleged infringing
"scenarios" presented by Plaintiff

   Claims construction was a judicial/legal determination as
distinct from the fact-finding functions of determining
infringement.  Accordingly, based on the Claims construction, the
Court, in considering the infringement issue, will make factual

findings by resolving any credibility issues[4] and drawing inferences from the evidence.

### C.   Infringement Analysis

#### 1.   First[5] Scenario (Pl. Ex. 195R)

Plaintiff's First Scenario (or presentation of a theory of infringement) is shown on the following page. Defendant contends that the following claim elements are not embodied in the device shown in the First Scenario:

- Video Game Controller Riser

- Mounting Member

- Means for Lockably Receiving

_____

[4] Of which there are few, if any

[5] The denomination of the Plaintiff's scenarios - or accused device presentations - as First, Second, etc. is based solely upon the order of discussion in final argument.

1. An accessory for aiding a video game player during play of a video game, the video game player operating a video game controller which transmits signals in response to manipulations made on the video game controller by the video game player, the transmitted signals being processed by a computer processor which responsively manipulates images on a television screen, said assessory comprising:



[D] said mounting member including means for lockably receiving a video game controller in fixed position on said mounting member. *[ located inside "C"]*

*[video game controller]*

*[label reading "lock---unlock"]*

[C] and a mounting member attached to said riser, said mounting member being positioned over the lap of a player with lower body weight on said base. *[yellow + green]*

[B] a riser, said riser extending upward from said base.

[A] a base, said base extending horizontally, said base being positionable on a surface so as to permit a video game player to stabilize said base by placing lower body weight on said base.

PLAINTIFF'S
EXHIBIT

195 R

## Video Game Controller

The Court has held:

> The words "video game controller" are
> construed as meaning a device whereby the
> hand movements of a player are converted to
> electrical impulses transmitted to the video
> game processor and used to control the
> operation of the game on screen.

Claim Construction Order at 12.

In the device at issue, the player's hand movements in
turning the steering wheel are converted to electrical impulses.
These impulses are then transmitted to the processor and
"decoded"^so as to have a vehicle in the game on screen react
realistically (to the extent possible) in response to the
player's hand movements

The term "video game controller" as used in the Patent is
illustrated by[6] a free-standing joy stick which becomes lockably
attached to the invented device.  It is true, as Defendant
contends, that in the accused device there is no video game
controller that would normally be used separately from the
accused device.  Nevertheless, the Court concludes that the
accused device is an accessory for aiding a player to operate a
video game controller.  Indeed, in the accused device, the video

_____

[6] Of course, patent claims are limited by their terms and
not by the particular illustrations presented in the patent.

10

game controller (i.e. the wheel mechanism, electrical components
to generate signals reflecting wheel movements and button pushing
and wires transmitting the signals) can function, albeit
inconveniently, without the balance of the device at issue.

The Court, therefore, concludes that the limitation that the
device at issue be an accessory for a video game controller is
satisfied.


### Riser

The Court has held:

> The words "riser . . . extending upward
> from said base" are construed to be limited
> to a riser of sufficient elevation to permit
> a player to get his lap (Claim 1) or legs
> (Claim 3) between the base and the mounting
> member.

Claim Construction Order at 13.

It is true, as Defendant notes, that there is no element of
the accused device that in and of itself functions as a riser and
only as a riser. Thus, there may be an issue as to literal
infringement. Nevertheless, in regard to the riser component,
the Court would, if necessary, find infringement by the doctrine
of equivalents. An essential characteristic of the invention is
to provide the player with means that connected a base on which

the player sits with a video game controller attached to a
mounting member above the player's lap.

The Court well recognizes that the doctrine of equivalents
is not a "wild card" that expansively increases the scope of
patent claims.  Yet, in regard to the riser element, if the
multi-purpose structure that holds the mounting member above the
player's lap does not literally meet the definition, the
structure serves the same function in the same way to obtain the
same result[7]; that is, to elevate the mounting member above the
lap of the player.

The Court holds, therefore, that the riser limitation of the
Claim at issue is satisfied.


> (c)   <u>Mounting Member</u>

The Court has held:

> The words "mounting member" are
> construed to include a platform, frame or
> support on which a video game controller is
> mounted . . .

Claim Construction Order at 13.

The Court finds a support on which a video game controller
is mounted.  As noted above, there is a video game controller
consisting of functional elements to generate electrical signals

---

[7]    See <u>Graver Tank</u>, 339 U.S. at 608.

through wires.  The controller is mounted on the lower structure
by attachment to a support.

Accordingly, the Court concludes that the limitation that
there be a "mounting member" is satisfied


### (d)   The "Lockably Received Limitation"

Claim 1 specifies that the mounting member must include
"means for lockably receiving a video game controller in fixed
position on said mounting member."  The Court has held:

- The words "means for lockably receiving a video game
  controller in fixed position on said mounting member"
  are construed to require that the attachment between
  the controller and the mounting member be "lockably.

- The term "lockably" is, in context, construed to mean
  "received in fixed position by the interlacing of
  fitting of parts into each other."  The use of the term
  "fixed position" in the Claim does not serve to negate
  the limitation that the fixing in position of the
  controller to the mounting member be "lockably."  While
  locked in place, the controller is in a "fixed
  position" on the mounting member; however, the fixing
  in position must be "lockably," that is by the
  interlacing of fitting of parts into each other.

Supplemental Claim Construction Order at 5

Because the limitation here at issue is phrased in terms of
means plus function, the limitations would include structure
disclosed in the patent and the equivalents thereto. See Lockheed
Martin Corp. v. Space Sys./ Loral, Inc., 324 F.3d 1308, 1320
(Fed. Cir. 2003).

The Court has held:

> that the controller holders 21-24 constitute
> disclosed structure performing the defined
> function.[8]

Supplemental Claim Construction Order at 5

Accordingly, the disclosed structure consists of four prongs (21 - 24), as shown below, used to hold a video game controller.



Fig. 1

Fig. 2

Fig. 3

Figures 1, 2, 3, '754 Patent.

---

[8]  The Court rejected Plaintiff's argument that the combination of the controller holders 21-24 and the casing of controller 40 constituted disclosed structures performing the defined function.  Supplemental Claim Construction Order at 6.

Thus, to meet the subject limitation, the device must have means equivalent to the disclosed holders for <u>lockably</u> <u>receiving</u> a video game controller <u>in</u> <u>fixed</u> <u>position</u> on the mounting member

The particular device under discussion includes the structure illustrated below consisting of a two prong or clip arrangement:



The two prongs or clips shown above, the putative "controller holders" to use terminology from the '754 Patent, might be said to "lockably receive" a game controller because the prongs or clips fit into a flange to prevent the tube holding the controller from slipping out of the mounting member.  However the prongs or clips, if deemed to be means for lockably receiving controller[9], do not receive the controller in <u>fixed</u> <u>position</u>. function of <u>receiving in fixed position</u> is accomplished by

---

[9]  Defendant argues that the difference between the disclosed controller holders fastened to a platform and the clips fastened to a ring is material.  The Court assumes, however, that in this respect the difference is not sufficient, alone, to negate equivalence.

other means, that is, by the structure assembled by screwing
parts tightly together.

Plaintiff seeks to have the Court eliminate the word
"lockably" from the Claim so as to read on virtually any
conceivable means for fixing a controller in position. In this
regard, Plaintiff would include any means of <u>firmly</u> attaching the
controller, even welding (Tr. 29-30), and offers as an example of
attachment that is not "lockably" a "string coupling" that
"let[s] the things move around." (Tr. 29). Thus, even a firm
string coupling would, in Plaintiff's view, be a lockable
attachment. The Court did not accept that position in the claim
construction process and does not accept it for purposes of
determining equivalence to the disclosed structure.

A very significant feature, if not the essence, of the
invention presented to the Patent office, is the ability of a
user easily to lock a game controller in fixed position and
conveniently to replace one game controller with another. The
invented device, an <u>accessory</u>, was intended to be used for more
than one controller in its ordinary usage. Indeed, the patentee
submitted to the Patent Examiner, as a description of the
invention, an advertisement by Plaintiff which proclaims, as a
principal feature, that the invented device "works with a variety
of joystick controls." Moreover, the advertisement invites the

16

user to "clamp your joystick control into the [product's] universal mount." [Emphasis in original]

The accused device under discussion materially varies from the disclosed structure in a significant fashion. It is, perhaps, theoretically possible for a user to undertake the disassembly of the device and substitute a different video game controller. Nevertheless, by no means does the structure of the device perform the function of lockably receiving the controller in fixed position in the same way as the easily releasable disclosed clip structure to achieve the same result of permitting a convenient interchange of video game controllers.

### 2. Second Scenario (Pl. Ex. 264R)

Plaintiff's Second Scenario is shown on the following page The sole issue presented that has not already been discussed with regard to Scenario One is whether a screw structure constitutes "means for lockably receiving" a controller. Plaintiff contends that a screw and the metal insert into which the screw is threaded is the equivalent of the disclosed structure

17

1. An accessory for aiding a video game player during play of a video game, the video game player operating a video game controller which transmits signals in response to manipulations made on the video game controller by the video game player, the transmitted signals being processed by a computer processor which responsively manipulates images on a television screen, said assessory comprising:



**[D]** said mounting member including means for lockably receiving a video game controller in fixed position on said mounting member. *[the object is a screw]*

**[C]** and a mounting member attached to said riser, said mounting member being positioned over the lap of a player with lower body weight on said base. *[yellow + green]*

**[B]** a riser, said riser extending upward from said base.

**[A]** a base, said base extending horizontally, said base being positionable on a surface so as to permit a video game player to stabilize said base by placing lower body weight on said base.

*[video game controller]*

PLAINTIFF'S EXHIBIT
264 R

The Court does not agree with Plaintiff.  A screw assembly does not provide for a lockable reception.  Even if it were, a screw and threaded receptacle are not equivalent means to the disclosed structure.  Thus, even assuming the function of providing lockable reception to be present, the screw does not attach the game controller in the same way as the disclosed structure and does not achieve the same result of simple, convenient use of more than one game controller.

### 3.   Third Scenario (Pl. Ex. 198R)

Plaintiff's Third Scenario is shown on the following page The sole issue presented by the Third Scenario that was not discussed with regard to its First Scenario is whether, as Plaintiff contends, the wheel with teeth constitutes "means for lockably receiving a controller."

1. An accessory for aiding a video game player during play of a video game, the video game player operating a video game controller which transmits signals in response to manipulations made on the video game controller by the video game player, the transmitted signals being processed by a computer processor which responsively manipulates images on a television screen, said assessory comprising:



PLAINTIFF'S
EXHIBIT
198 R

[video game controller]

[D] said mounting member including means for lockably receiving a video game controller in fixed position on said mounting member.

[C] and a mounting member attached to said riser, said mounting member being positioned over the lap of a player with lower body weight on said base. [yellow + green]

[B] a riser, said riser extending upward from said base.

[A] a base, said base extending horizontally, said base being positionable on a surface so as to permit a video game player to stabilize said base by placing lower body weight on said base.

The Court does not agree with Plaintiff's contention. It is not the "wheel" that receives the game controller in fixed position.  Rather, it is an entire assemblage of parts held firmly together by screws.  The controller cannot be removed and/or another controller substituted without substantial disassembly and reassembly.  Even if the assembly performed a function of lockable reception, the "wheel" is not the equivalent of the disclosed structure.

### 4.   Fourth Scenario (Pl. Ex. 199R)

Plaintiff's Fourth Scenario is shown on the following page. This device presents somewhat different questions with regard to the "riser" and "lockably received" elements of Claim 1

21

1. An accessory for aiding a video game player during play of a video game, the video game player operating a video game controller which transmits signals in response to manipulations made on the video game controller by the video game player, the transmitted signals being processed by a computer processor which responsively manipulates images on a television screen, said assessory comprising:



[D] said mounting member including means for lockably receiving a video game controller in fixed position on said mounting member.

PLAINTIFF'S
EXHIBIT

199 R

[video game controller]

[C] and a mounting member attached to said riser, said mounting member being positioned over the lap of a player with lower body weight on said base.
[yellow + green]

[B] a riser, said riser extending upward from said base.

[A] a base, said base extending horizontally, said base being positionable on a surface so as to permit a video game player to stabilize said base by placing lower body weight on said base.

(a) <u>Riser</u>

In the Claims Construction Order, the Court held:

> The words "riser . . . extending
> upward from said base" are
> construed to be limited to a riser
> of sufficient elevation to permit a
> player to get his lap (Claim 1) or
> legs (Claim 3) between the base and
> the mounting member.

Claims Construction Order at 13

In the Fourth Scenario, the riser is not of sufficient elevation to permit a player to get his lap or legs between bar and the mounting member. Rather, the "mounting member" is located below the lap of the player. Even Plaintiff concedes that "some stability is afforded by the top of your thighs on this product." (Tr. 65). Plaintiff, therefore, seeks to rely on the Doctrine of Equivalents as to the riser element.

The Court does not find the putative riser in the device to be the equivalent of the riser in Claim 1. The riser limitation requires an element that places the mounting member "over the lap of a player." A user that places the mounting member below the lap is simply not equivalent. While the "short" riser might be said to absorb some torque, it does not provide support for weight of the controller as does a riser that lifts the mounting member above the lap so that no weight is borne by the player's

23

lap.[10]  The Court rejects Plaintiff's post-trial argument[11] that the mounting member would be "above the lap" unless it were "under the shin" or "below the joinder of the two legs" of the player. (Tr. 67-68).  To so read the claim would be unsound.  In the context of the Patent, "above the lap" means that the mounting member is structured high enough not to require the player's lap to bear any weight.


### (b)  Mounting Member

In Scenario Four the controller, as distinct from the mounting member, has a receptacle.  The mounting member has pins that stick out with flattened sides.  The controller has slots into which the pins fit.  Therefore, at the threshold there is an issue as to whether the mounting member ever has "means for receiving."  The Court will assume equivalence as to this matter. It would appear to make no difference if there were substituted an arrangement whereby the slots were on the mounting member and the pins were on the controller although some redesign might be needed.

---

[10]  In the Amendment After First Action at 4, the Patentee states "there is inventiveness in extending the point on which those applied torques are to be absorbed to a place below, and stabilized by the thighs. . . [Emphasis added.]

[11]  Not presented in the Claims Construction phase.

There is, nonetheless, no means for <u>lockably receiving</u> the controller <u>in a fixed position</u>.  Instead, the pins in the slots keep the controller loosely connected to the mounting member, but it is the player's lap that keeps the controller in fixed position.  Moreover, by no means is the structure of pins slots with a mounting below the top of the lap equivalent to the disclosed structure in which clips on a platform keep the controller in fixed position above the lap

### D.    <u>Invalidity</u>

In the absence of infringement, the Court need not resolve the question of whether Defendant has proven, by clear and convincing evidence, that the Patent is invalid.  The Court will note, however, that if the Claims at issue were construed as broadly as Plaintiff contends, there would, indeed, be serious invalidity issues presented.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court decides:

> 1.    Defendant has not infringed any of the Claims of U.S. Patent No. 4,494,754.
>
> 2.    The Court has not reached issues of validity.

3.    Judgment has been entered by separate Order

SO DECIDED, on <u>Tuesday, May 6, 2003</u>.


_____/ s /_____
Marvin J. Garbis
United States District Judge